UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| ALAMA ROBINSON,<br><br>              Plaintiff,<br><br>v.<br><br>WESTINGHOUSE AIR BRAKE TECHNOLOGIES CORPORATION, a Delaware corporation; WABTEC CORPORATION, a Pennsylvania Corporation; and DOES 1-20, inclusive,<br><br>              Defendants. | 3:09-CV-00202-LRH-VPC<br><br>ORDER |

Before the court is Defendants Westinghouse Air Brake Technologies Corporation and Wabtec Corporation's Partial Motion to Dismiss (#15[1]). In response, Plaintiff Alama Robinson filed an opposition (#21) to which Defendants replied (#22).

**I.    Facts and Procedural History**[2]

This is an employment discrimination dispute arising out of Plaintiff's employment as a Production Manager at Wabtec's Carson City, Nevada location. Plaintiff began his employment with Defendants on March 20, 2007.[3] As a Production Manager, Plaintiff oversaw delivery and shipping of requested parts to railroad clients, conducted quality assurance of equipment sold to

---

[1] Refers to the court's docket entry number.

[2] The court has taken the following facts from the complaint.

[3] Defendant Wabtec is a subsidiary of Defendant Westinghouse. Westinghouse and Wabtec manufacture and sell parts for the railroad industry.

railroad clients, and supervised staff in Wabtec's Manufacturing, Intake, and Delivery Departments.

Plaintiff alleges that throughout his employment, Wabtec employees harassed and discriminated against him because of his race. For example, Plaintiff alleges the following: (1) Plaintiff's direct supervisor and Plant Manager, Justin Warmack, and one of Plaintiff's subordinate employees, Michael Cross, referred to Chinese food as "Gook food"; (2) upon noticing Plaintiff's family photograph in his office, Warmack and Cross stated, "You got yourself a white girl" and laughed; (3) when Plaintiff asked William White, a co-worker, which employee would be responsible for a particular assignment, White replied, "That nigga over there" and pointed to David Lemauh, a Samoan male; and (4) in May of 2008, in Plaintiff's presence, Warmack instructed Lemauh to "nigger rig" a broken part that was due for shipment. (Compl. (#2) ¶¶ 23-27.)

In addition, Plaintiff alleges that at a drive-through window, when the attendant asked Plaintiff for her pen back, White stated, "Just like a black man, always trying to steal something." Warmack, who was present, laughed and later repeated the comment to Angelique Jones, an employee in Wabtec's Human Resources Department. Jones replied that such comments were inappropriate. In response, Warmack stated that he would not have hired Plaintiff if he did not believe Plaintiff could tolerate such statements.

On May 28, 2008, Plaintiff complained to Warmack about this treatment. Plaintiff also told Warmack that some of Plaintiff's subordinates were stealing customer property and failing to test products sold to customers. Warmack responded, "If it's fucked up, you fucked it up." (Compl. (#2) ¶ 32.)

Unsatisfied with Warmack's response, Plaintiff requested a meeting with Warmack and Jones. Although it is not clear how Jones responded to Plaintiff's complaints, as a result of the meeting, Warmack told Plaintiff to stay in his office at all times and prohibited him from speaking to other employees. Warmack also confiscated Plaintiff's office keys and company phone and began following Plaintiff and questioning each employee with whom Plaintiff spoke about the substance of the conversation.

1    On June 4, 2008, Plaintiff e-mailed Ronald Shannon, Wabtec's Human Resources
2 Manager. Plaintiff asked Shannon if someone from Wabtec's corporate headquarters in
3 Pennsylvania could come to the Carson City plant and investigate Plaintiff's complaints.
4 Plaintiff received no response. Plaintiff also attempted to contact Shannon by telephone and
5 received no response.
6    At some point, however, Shannon visited the Carson City plant and met with Plaintiff,
7 Warmack, and Jones. In response to Plaintiff's complaints about discrimination, theft of
8 customer property, and sales of untested equipment, Shannon attempted to resolve the situation
9 informally and refused to conduct any further investigation.
10    On July 17, 2008, Plaintiff filed a claim with the Equal Employment Opportunity
11 Commission ("EEOC"). Two days later, Wabtec received notice of the complaint. On July 23,
12 2008, despite receiving a positive performance evaluation from Warmack, Plaintiff was
13 terminated. On January 20, 2009, the EEOC issued to Plaintiff a Notice of Right to Sue.

14 **II.   Legal Standard**

15    Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). To
16 survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule
17 of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med.*
18 *Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain
19 statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The
20 Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading
21 that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of
22 action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp.*
23 *v. Twombly*, 550 U.S. 544, 555 (2007)).
24    Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,
25 accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal
26 quotation marks omitted). A claim has facial plausibility when the pleaded factual content
27 allows the court to draw the reasonable inference, based on the court's judicial experience and
28 common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The

1  plausibility standard is not akin to a probability requirement, but it asks for more than a sheer
2  possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely
3  consistent with a defendant's liability, it stops short of the line between possibility and
4  plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).
5         In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as
6  true. *Id.* (citation omitted).  However, "bare assertions . . . amount[ing] to nothing more than a
7  formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."
8  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951)
9  (alteration in original) (internal quotation marks omitted).  The court discounts these allegations
10 because they do "nothing more than state a legal conclusion – even if that conclusion is cast in
11 the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.)  "In sum, for a complaint
12 to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences
13 from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*
14 (quoting *Iqbal*, 129 S. Ct. at 1949).
15 **III.  Discussion**
16        In the complaint, Plaintiff asserts the following claims for relief: (1) wrongful
17 termination; (2) racial discrimination; (3) hostile work environment harassment; (4) retaliation;
18 (5) breach of an implied contract; (6) intentional infliction of emotional distress; and (7)
19 negligent infliction of emotional distress.  Defendants concede that Plaintiff has stated a
20 retaliation claim, but seek dismissal of the remainder of Plaintiff's claims.
21        **A.  Wrongful Termination**
22        Plaintiff alleges Defendants wrongfully terminated him in violation of Nevada law
23 because he complained about the inappropriate comments and reported that his co-workers were
24 stealing and failing to test equipment.  Defendants counter that the court should dismiss this
25 claim because Nevada law does not recognize wrongful termination claims where federal and
26 state anti-discrimination statutes provide an adequate remedy.
27        The court agrees.  The Nevada Supreme Court does not recognize an action for tortious
28 discharge where a plaintiff has an adequate, comprehensive statutory remedy. *Ozawa v. Vission*

1  *Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009) (citing *D'Angelo v. Gardner*, 819 P.2d 206, 217
2  (Nev. 1991)).  Here, Title VII provides an adequate remedy for Plaintiff's discrimination and
3  retaliation claims.  *See Jones v. Reno Hilton Resort Corp.*, 889 F. Supp. 408, 412 n.4 (D. Nev.
4  1995) (noting that the Nevada Supreme Court would consider the remedies available under Title
5  VII comprehensive enough to bar the plaintiff's tortious discharge claim).  Because the Nevada
6  court would not recognize a wrongful termination claim under these circumstances, dismissal of
7  the claim is warranted.

      **B.**      **Discrimination**

9        Plaintiff alleges Defendants discriminated against him on the basis of his race in violation
10  of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.  To prevail on a
11  discrimination claim, the plaintiff must establish a prima facie case of discrimination by
12  presenting evidence that "gives rise to an inference of unlawful discrimination."  *Cordova v.*
13  *State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v.*
14  *Green*, 411 U.S. 792, 802 (1973).   A plaintiff can establish a prima facie case of discrimination
15  through either the  burden shifting framework set forth in *McDonnell Douglas* or with direct or
16  circumstantial evidence of discriminatory intent.  *See Metoyer v. Chassman*, 504 F.3d 919, 931
17  (9th Cir. 2007) ("When responding to a summary judgment motion . . . [the plaintiff] may
18  proceed using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or
19  circumstantial evidence demonstrating that a discriminatory reason more likely than not
20  motivated [the employer].") (citation omitted) (alterations in original).

21        Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of
22  establishing a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  To
23  establish a prima facie case, the plaintiff must show that (1) he belongs to a protected class; (2)
24  he was qualified for her position; (3) he suffered an adverse employment action; and (4) similarly
25  situated individuals outside of his protected class were treated more favorably.  *Davis v. Team*
26  *Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (*citing Chuang v. Univ. of Cal. Davis*, 225 F.3d
27  1115, 1126 (9th Cir. 2000)).  If the plaintiff succeeds in establishing a prima facie case, the
28  burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly

1 discriminatory conduct. *McDonnell Douglas*, 411 U.S. at 802. If the defendant provides such a
2 justification, the burden shifts back to the plaintiff to show that the defendant's justification is a
3 mere pretext for discrimination. *Id.* at 804.

4     Defendants fault the complaint for failing to allege facts (1) concerning or naming white
5 employees who were treated differently than Plaintiff and (2) describing any employment action
6 taken because of Plaintiff's race. The court disagrees and finds that Plaintiff has stated a claim
7 upon which relief can be granted. In the complaint, Plaintiff alleges he was treated differently
8 than similarly situated white employees and identifies various incidents evidencing
9 discriminatory animus on the part of Wabtec employees.[4] Although it is yet to be seen whether
10 the animus of these employees contributed to Plaintiff's termination, on these facts, Plaintiff is
11 entitled to conduct discovery and to present evidence in support of his discrimination claim.

12     **C.    Hostile Work Environment**

13     Although not explicitly included in the text of Title VII, claims based on a hostile work
14 environment fall within Title VII's protections. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).
15 To survive summary judgment on a hostile work environment claim, "[a plaintiff] must raise a
16 triable issue of fact as to whether (1) [he] was 'subjected to verbal or physical conduct' because
17 of [his] race, (2) 'the conduct was unwelcome,' and (3) 'the conduct was sufficiently severe or
18 pervasive to alter the conditions of [the plaintiff's] employment and create an abusive work
19 environment.'" *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (quoting *Kang v. U.*
20 *Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)).

21     Defendants argue Plaintiff has failed to state a claim for hostile work environment
22 because the allegations in the complaint do not amount to severe and pervasive harassment. To
23 determine whether conduct was sufficiently severe or pervasive to create a hostile work
24 environment, the court considers "all the circumstances, including the frequency of the
25 discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

26

27     [4]The court notes that because the parties have not engaged in discovery, at this stage in the proceedings it would be difficult for Plaintiff to allege specific facts demonstrating how Defendants
28 treated similarly situated white individuals.

1 offensive utterance; and whether it unreasonably interferes with an employee's work
2 performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (citation and
3 internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents
4 (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions
5 of employment.'" *Id.* at 271 (citation omitted). The ultimate question is whether a reasonable
6 person would consider the conduct sufficiently severe or pervasive to alter the conditions of
7 employment and create an abusive working environment. *Ellison v. Brady*, 924 F.2d 872, 879
8 (9th Cir. 1991).

9 The court finds that the conduct alleged in the complaint could rise to the level of severity
10 or pervasiveness required to support a hostile work environment claim. As a result, the court will
11 deny dismissal of this claim.

12       **D.**    **Breach of Implied Contract**

13 In his fifth claim for relief, Plaintiff alleges Defendants breached an implied contract for
14 his continued employment. Plaintiff alleges this contract was created by the following: (1)
15 favorable formal and informal job performance reviews; (2) the lack of any direct negative
16 criticism of his job performance; (3) compliments from his supervisors and colleagues; and (4)
17 promises of continued employment.

18 Under Nevada law, employment contracts are presumably terminable at will. *Yeager v.*
19 *Harrah's Club, Inc.*, 897 P.2d 1093, 1095 (Nev. 1995). "An employee may rebut this
20 presumption by proving by a preponderance of the evidence that there was an express or implied
21 contract between his employer and himself that his employer would fire him only for cause."
22 *Am. Bank Stationery v. Farmer*, 799 P.2d 1100, 1101-02 (Nev. 1990).

23 Here, the allegations in Plaintiff's complaint do not suggest that Defendants promised
24 Plaintiff that he would be fired only for cause. "General expressions of long term employment or
25 job advancement do not convert an at-will employment contract to a termination only for cause
26 contract." *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989). Further, that Plaintiff
27 believed he would not be discharged without cause is not controlling. Employments contracts
28 cannot be created by the subjective expectations of the employee. *Id.* (citations omitted).

Accordingly, the court finds that under the facts alleged in the complaint, Plaintiff's employment was at-will and cannot support a breach of contract claim.

### E. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, the plaintiff must demonstrate the following: (1) "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress"; (2) severe or extreme emotional distress; and (3) actual or proximate causation. *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981) (citation omitted).

Extreme and outrageous conduct "is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted). This is not such a case. The court finds no allegation in the complaint that amounts to extreme and outrageous conduct. As such, the court will dismiss the intentional infliction of emotional distress claim.

### F. Negligent Infliction of Emotional Distress

"[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred, or in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented." *Barmettler v. Reno Air, Inc.*, 856 P.2d 1382, 1387 (Nev. 1998). General physical or emotional discomfort are insufficient to establish a claim for negligent infliction of emotional distress. *Id.* (citation omitted).

Here, there is no allegation of physical impact or serious emotional distress causing physical injury or illness. In the complaint, Plaintiff alleges that he suffered "severe physical, mental, and emotional distress and discomfort, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame . . . ." (Compl. (#2) ¶ 101.) Despite vaguely alleging that he suffered "severe physical" distress, Plaintiff does not allege that he suffered physical injury or illness either before or after the alleged emotional distress. Dismissal of this claim is therefore warranted.

/ / /

1    IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (#15) is GRANTED
2 in part and DENIED in part.
3    IT IS SO ORDERED.
4    DATED this 1st day of April, 2010.

	LARRY R. HICKS
	UNITED STATES DISTRICT JUDGE